**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| GENE RACKLEY, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | Civil Action No.  SA-11-CV-387-XR |
| | § | |
| JPMORGAN CHASE BANK, NATIONAL | § | |
| ASSOCIATION, SUCCESSOR BY | § | |
| MERGER TO CHASE HOME FINANCE | § | |
| LLC, | § | |
| | § | |
| *Defendants.* | | |

## ORDER

On this date the Court considered Defendant's Motion to Dismiss for Failure to State a Claim or Alternatively, Motion for a More Definite Statement (Docket No. 4).  For the following reasons, the Court GRANTS IN PART the motion to dismiss and GRANTS IN PART the motion for a more definite statement.

### Factual Background[1]

In February 2007, Plaintiff Gene Rackley entered into a mortgage home loan with Defendant Chase Home Finance LLC (Chase) secured by Plaintiff's newly-purchased home at 240 Leather Leaf, Boerne, Texas 78006.  By 2009, Plaintiff had become delinquent in his monthly mortgage payments and Chase scheduled Plaintiff's property for foreclosure.  Plaintiff sought a permanent loan

---

[1]The facts contained in this summary are those alleged by Plaintiff's Original Petition and attached "Exhibit A," as well as Plaintiff's Application and its own attached Affidavit, both filed in state district court. Pl.'s Orig. Pet. and TRO, Apr. 28, 2011, Ex. A; Pl.'s App. for TRO and Temp. Inj.; Pl.'s Aff.

1

modification under the federal Home Affordable Modification Program (HAMP) enacted in 2009 to reduce foreclosures. As the first step of the HAMP process, Plaintiff signed a Home Affordable Modification Trial Period Plan (TPP) by which Plaintiff agreed, among other things, to make three monthly payments of $2,702.23 by the first of August, September, and October 2009, and to provide documents regarding Plaintiff's dire finances. Chase would suspend foreclosing on Plaintiff's property pending its tender of an executed Modification Agreement (the second part of the process) prior to the TPP's expiration ("Modification Effective") date of November 1, 2009. Plaintiff made the scheduled payments and Chase suspended foreclosure of Plaintiff's property. Although the pleadings are somewhat unclear on the events of late 2009 and 2010, at some point in early 2011 Plaintiff was again notified by Chase or its successor by merger, Defendant J.P. Morgan Chase Bank, N.A. (JPMC, collectively), that Plaintiff's property would be foreclosed on May 3, 2011.

## Procedural History

On April 28, 2011, Plaintiff filed suit in the 216th District Court in Kendall County, Texas, seeking monetary damages, costs, attorney's fees, and injunctive relief. In his Original Petition, Plaintiff alleged that Chase's rescheduled foreclosure constituted a breach of a loan modification (the TPP, which Plaintiff attached as to his Original Petition as "Exhibit A") and thus a breach of contract.[2] In his Application for a Temporary Restraining Order and Temporary Injunction, Plaintiff further alleged misrepresentation by Chase's "agents, servants, employees, or ostensible agents" within the course of their business "to the effect that the property would not be posted for foreclosure or foreclosed upon if the Plaintiff complied with all the terms" of the TPP.[3] Plaintiff further

---

[2] Pl.'s Orig. Pet. and TRO. 2.

[3] Pl.'s App. For TRO and Temp. Inj. 1.

supported this in an attached Affidavit to his Application, which stated "[i]t was represented to me, and the agreement provides that if I am in compliance with the agreement....the lender will suspend any scheduled foreclosure sale."[4] Plaintiff obtained a Temporary Restraining Order against Chase on April 28, 2011. On May 17, 2011, Defendant JPMC timely filed a Notice of Removal (Docket No. 1) to this Court on diversity grounds pursuant to 28 U.S.C. §§ 1441 and 1446. JPMC then filed a Motion to Dismiss for Failure to State a Claim and alternatively for a More Definite Statement on May 23, 2011. On June 2, 2011, Plaintiff filed a Response to Defendant's Motion to Dismiss (Docket No. 6), and JPMC filed a Reply Brief in Support of Its Motion (Docket No. 7) on June 8, 2011.

## Legal Standard

A court may dismiss a complaint as a matter of law if that complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). A court considering a Rule 12(b)(6) motion should take as true all factual allegations of the complaint and construe them favorably to the plaintiff. *Fernandez-Montez v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). To survive a Rule 12(b)(6) motion, a complaint requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Under *Twombly*'s "plausibility" standard, factual allegations need not have "detailed factual allegations" but must suffice to "raise a right to relief above the speculative level." *Id.* In other words, a complaint requires more than "naked assertion" absent "further factual enhancement." *Id.* at 557. Consequently, a claim achieves facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

---

[4]Pl.'s Aff.

3

liable for the misconduct alleged." *Ashcroft v. Iqbal*, — U.S.----, 129 S.Ct. 1937, 1950, 173 L.Ed.2d 868 (2009).

A party may move for, and a court may grant, a more definite statement of a pleading which is so vague or ambiguous that the movant cannot reasonably be expected to prepare a response. FED. R. CIV. P. 12(e). The motion must be made before a responsive pleading is filed, and it must point out the defects complained of and details desired. *Id.* Where a complaint is devoid of facts that would put the defendant on notice as to what conduct supports the claim, the complaint fails to satisfy notice pleading requirements. *Anderson v. U.S. Dept. of Hous. and Urban Dev.*, 554 F.3d 525, 528 (5th Cir. 2008).

## Analysis

### A. The Breach of Contract Claim

In its Motion to Dismiss, Defendant JPMC seeks dismissal of Plaintiff's breach of contract claim, arguing that because the TPP is not supported by new consideration and expressly denies that it modifies the original loan terms, the TPP is not an enforceable contract and thus no breach of contract occurred.[5] In support JPMC cites Plaintiff's TPP, which provides:

> I [the borrowers] understand that the Plan is not a Modification of the Loan Documents and that the Loan Documents will not be modified unless and until....I receive a fully executed copy of a Modification Agreement....

> I [the borrowers] agree to the following...[t]hat all terms and provisions of the Loan Documents remain in full force and effect; nothing in this Plan shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents. The Lender and I will be bound by, and will comply with, all of the terms and provisions of the Loan Documents.

---

[5]*See* Def.'s Mot. To Dismiss. 4-5.

(Pl.'s Orig. Pet. And TRO., Ex. A, §§ 2(G), 4(D)).[6]  Alternatively, JPMC alleges the TPP's

"Modification Effective Date" of November 1, 2009, signals its expiration long before the May 2011

foreclosure and so precludes the alleged later breach by JPMC.[7]

Plaintiff responds that the terms of the TPP do constitute an enforceable loan modification

contract that obligated JPMC to suspend foreclosure on Plaintiff's property provided that Plaintiff

met all his obligations set forth in the TPP.[8]  Plaintiff cites his own TPP provisions in support:

> If I am in compliance with this Trial Period Plan (the "Plan") and my representations
> of Section 1 continue to be true in all material respects, then the Lender will provide
> me with a Home Affordable Modification Agreement. . . .
>
>  Except as set forth in Section 2.C. below, the Lender will suspend any scheduled
> foreclosure sale, provided I continue to meet the obligations under this plan, and any
> pending foreclosure action will not be dismissed and may be immediately resumed
> from the point of which I was suspended if this plan terminates. . . .
>
> If I comply with the requirements in Section 2 and my representations in Section 1
> continue to be true in all material respects, the Lender will send me a Modification
> Agreement for my signature which will modify my Loan Documents as necessary to
> reflect this new payment amount and waive any unpaid late charges accrued to date....

(Pl.'s Orig. Pet. And TRO., Ex. A at 1, §§ 2(B), 3).[9]

There is no Fifth Circuit precedent, and sparse precedent nationwide, on diversity-based

breach of contract claims based upon HAMP TPPs.  Of that precedent which exists, almost every

district court has affirmed 12(b)(6) dismissal of such breach claims on the basis that the borrower's

failure to receive an executed Home Affordable Modification Agreement prevented the borrower's

---

[6]*Id.*

[7]*See* Def.'s Reply Br. 3.

[8]*See* Pl.'s Resp. 1-2.

[9]*Id.*

compliance with all TPP obligations.  *See e.g., Wigod v. Wells Fargo Bank, N.A.*, No. 10 CV 2348, 2011 WL 250501, at *4 (N.D. Ill. Jan. 25, 2011); *Grill v. BAC Home Loans Servicing LP*, No. 10-CV-03057-FCD/GGH, 2011 WL 127891, at *3-4 (E.D. Cal., Jan. 14, 2011); *Brown v. Bank of New York Mellon*, No. 1:10 Civ 550, 2011 WL 206124, at *2-3 (W.D. Mich. Jan. 21, 2011).  Moreover, several federal district courts have expressly rejected the argument that the TPP's requirements of provision of finance information and payments constitute new consideration supporting a permanent loan modification.  *See Barinaga v. JP Morgan Chase & Co.*, 749 F.Supp.2d 1164, 1173-78 (D. Or. 2010); *Vida v. One West Bank, F.S.B.*, No. 10-987-AC, 2010 WL 5148473, at *7 (D. Or. Dec. 13, 2010); *Morales v. Chase Home Finance LLC*, No. C 10-02068 JSW, 2011 WL 1670045 *5 (N.D. Cal. Apr. 11, 2011); *Bourdelais v. J.P. Morgan Chase*, No. 3:10CV670-HEH, 2011 WL 1206311, at *4-5 (E.D. VA Apr. 01, 2011).

The few precedents supportive of a borrower's provision of information and TPP payments as new consideration have relied on arguments that the TPP constituted a contract entitling the borrower to a lender's ultimate decision regarding whether to modify.  *See Durmic v. J.P. Morgan Chase Bank, NA.*, No. 10-CV-10380-RGS, 2010 WL 4825632, slip op. at *3 (D. Mass. Nov. 24, 2010) (finding TPP obligations new consideration based on "one type" of definition including "a legal detriment to the promisee that entails even the slightest trouble or inconvenience"); *Bosque v. Wells Fargo Bank, N.A.*, 762 F.Supp.2d 342, 352 (D. Mass. 2011) (affirming TPP as a contract entitling borrower to a lender's decision regarding borrower's entitlement to permanent modification).

In Texas, breach of contract has four elements:1) the existence of a valid contract; 2) the contract's performance by Plaintiff; 3) breach by the Defendant; and 4) Plaintiff damages resulting

from that breach.  *Smith Intern., Inc. v. Egle Group, LLC*, 490 F.3d 380, 387 (5th Cir. 2007).

Usually, an enforceable contract modification must be supported by new consideration.  *See*

*McCallum Highlands, Ltd. v. Washington Capital Dus, Inc.*, 66 F.3d 89, 94-95 (5th Cir. 1995).

Under Texas law's "pre-existing duty rule," an agreement to do what one is already bound to do

generally cannot serve as sufficient consideration to support a contract modification. *Id.* at 93.

Plaintiff was already obligated to disclose to JPMC his financial information under his original loan

document, and his payments both during and after the Modification Effective Date went toward that

loan's debt.[10]  Consequently, no new consideration supported Plaintiff's TPP sufficient to make it

an enforceable contract to modify his loan with JPMC.

Additionally, Plaintiff's claim of entitlement to a permanent modification assumes that timely

payment of $2,072.23 in August, September, and October 2009, and provision of updated finance

information fully comprise his TPP obligations.[11]  In short, Plaintiff argues that because he

performed all obligations in those provisions he cites, he is entitled to a permanent modification of

his original loan rather than merely a decision by JPMC.  However, courts applying Texas law must

interpret contracts by considering the entire instrument.  *Mullins v. TestAmerica, Inc.*, 564 F.3d 386,

404 (5th Cir. 2009).  This court therefore must note the TPP declares it is only an "estimate" of

future payments under "the modified loan terms, which will be finalized in accordance with Section

3 below."[12]  More importantly, the TPP's Section 3 states that finalization of a modification occurs

only upon performance of all stated obligations, which include borrower receipt of a lender-executed

---

[10]*See* Pl.'s Orig. Pet. And TRO., Ex. A,  §§ 2(E), 2(F).

[11]*See* Pl.'s Orig. Pet. 1; Pl.'s Aff.

[12]*See*  Pl.'s Orig. Pet. And TRO., Ex. A, § 2.

Modification Agreement before the Modification Effective date.[13]  Section 2 also provides:

> If prior to the Modification Effective Date, (I) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement....the Loan Documents will not be modified and this Plan will terminate.  In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents. . . .

Pl.'s Orig. Pet. And TRO., Ex. A, §§ 2(F).  Plaintiff did not allege in his complaint that JPMC had or was planning to send to him an executed Modification Agreement and thus has not plead all facts necessary to establish the element of breach.  JPMC's motion to dismiss for failure to state a claim is therefore GRANTED IN PART in relation to Plaintiff's breach of contract claim.

## B. The Negligent/Fraudulent Misrepresentation Claim

Plaintiff also alleges that JPMC fraudulently or negligently misrepresented to him that his property would not be scheduled for or foreclosed upon if he complied with all terms of the TPP.  Plaintiff's affidavit further alleged that JPMC's agents or employees, as well as the TPP's provisions, committed this misrepresentation in their course of business.[14]  JPMC responds that as the breach of contract claim should be dismissed, no other claim exists to support the state court injunction or that, if one does, it requires a more definite statement.[15]

Under Texas law, a claim for negligent misrepresentation consists of four elements: 1) representation by a Defendant in the course of his business or a transaction in which he has a pecuniary interest; 2) Defendant supplied false information for the guidance of others in their

---

[13]*Id.* at § 3.

[14]*See* Pl.'s Orig. Pet. 1, Pl.'s Aff., Pl.'s App. For TRO. 1.

[15]*See* Def.'s Mot. To Dismiss. 5-6.

business; 3) Defendant did not exercise reasonable care or competence in obtaining or communicating the information; and 4) Plaintiff suffered a pecuniary loss by justifiably relying on the representation. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395-96 (5th Cir. 2005). Fraudulent misrepresentation requires these elements as well as a defendant's knowledge or reckless disregard of a statement's falsity at the time a representation was made. *See Haynes v. Beceiro*, 219 S.W.3d 24, 27 (Tex. App.–San Antonio 2006, pet. denied). Negligent misrepresentation frequently involves a defendant's statement that a contract exists upon which the plaintiff relies before discovering that the contract has been rejected or never completed. *See Agillion, Inc. v. Oliver*, 114 S.W.3d 86, 89 (Tex. App.–Austin 2003, no pet.). Consequently, a claim for negligent misrepresentation is recognized in lieu of a breach of contract claim and is not usually available when a contract is in force between the parties. *Id.* Importantly, negligent or fraudulent misrepresentations must be pled with particularity under Federal Rule of Civil Procedure 9(b). *Lone Star Fund V (U.S.), L.P. v. Barclay's Bank PLC*, 594 F.3d 383, 388 (5th Cir. 2010).

Here, Plaintiff's pleadings allege JPMC improperly made a false representation to him via spoken and written words of the existence of a contract in guidance of his compliance with the TPP and which Plaintiff duly complied with to his detriment. But Plaintiff's pleadings only allege "misrepresentation";[16] because they fail to designate whether that alleged misrepresentation was negligent or fraudulent, and when or where the verbal misrepresentations were made, Plaintiff has not sufficiently pled all factors of his respective misrepresentation claim. Because the few facts which Plaintiff has pled keep his misrepresentation claim from being a factually "devoid" complaint and JPMC's request demonstrates its amenability to clarification, a more definite statement is

---

[16]*See* Pl.'s App. for TRO. and Temp. Inj. 1; Pl.'s Aff.; Pl.'s Resp. 2.

appropriate. *Anderson*, 554 F.3d at 528. Plaintiff shall file an amended complaint containing sufficient factual allegations to satisfy the heightened pleading standard of Federal Rule of Civil Procedure 9(b). JPMC's motion for a more definite statement is thus GRANTED IN PART to clarify Plaintiff's misrepresentation claim.

### Conclusion

Defendant JPMC's motions to dismiss and for a more definite statement are GRANTED IN PART. The motion to dismiss is GRANTED as to Plaintiff's breach of contract claim. The motion for more definite statement is GRANTED as to Plaintiff's misrepresentation claim. Plaintiff shall file an amended complaint by August 3, 2011, fourteen days from the date of this order. Failure to file an amended complaint by that date may result in dismissal of the case.

It is so ORDERED.

SIGNED this 21st day of July, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE